UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  4:10-10063-CIV-KING/BANDSTRA

ROBERT EDWARDS, AMANDA
COCHRAN, CARLOS CALUO,
WILMER A. RIVERA, DONNA
A. GOLDBERG, TIPAWAN
GAUTHIER, TROY FELDKAMP,
MICHAEL A. COPE, PHILIP
SCHUMACHER, JAMES PIERRILUS,
LUBY A. MEYERS, NATALYA
LITSOVA, KATHRYN MURPHY,
and ANNALISA WILKERSON,

   Plaintiffs,

v.

OUT OF THE BLUE KEY WEST, LLC,
KENNETH J. FRANCIOSE AND
MARY J. PFUND,

   Defendants.
_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

  Plaintiffs, ROBERT EDWARDS, AMANDA COCHRAN, CARLOS CALUO, WILMER A.

RIVERA, DONNA A. GOLDBERG, TIPAWAN GAUTHIER, TROY FELDKAMP, MICHAELA.

COPE, PHILIP SCHUMACHER, JAMES PIERRILUS, LUBY A. MEYERS, NATALYA

LITSOVA, KATHRYN MURPHY, and ANNALISA WILKERSON, by and through the

undersigned counsel, Todd W. Shulby, P.A., pursuant to Rule 56, Fed.R.Civ.P., and Local Rule

7.1.C and 7.5, S.D. Fla. L.R., submit this Response in Opposition to Defendant's Motion for

Summary Judgment, and state as follows:

I.    **REBUTTAL OF DEFENDANT'S "UNDISPUTED" MATERIAL FACTS**

1.    In support of her Motion, Defendant Pfund claims that she was not responsible for the day-to-day operations of the restaurant.  Plaintiffs dispute this contention.  As set forth in Plaintiffs' declarations, Defendant Pfund was quite involved in the day-to-day operations of the restaurant as she was one of just two officers and owners of the restaurant, held herself out as the "Managing Member" to the IRS, held herself out as responsible for "accounts payable," wrote countless checks for the business, made all of the deposits for the business, and entered countless contracts and made numerous purchases for the restaurant.  See Plaintiffs' Motion for Summary Judgment, Exhibit A (Declarations of Plaintiffs); see also Plaintiffs' Motion for Summary Judgment, Concise Statement of Material Facts, ¶¶3-24.

2.    In support of her Motion, Defendant Pfund claims that she had no supervisory authority over the Plaintiffs and/or other employees of the restaurant.  Plaintiffs dispute this contention. As set forth in Plaintiffs' declarations, Ms. Pfund was very involved in the supervision of Plaintiffs and other employees, interviewed employees, hired employees, fired employees, was at the restaurant daily, supervised employees, gave directions to employees, told employees what to do, was in charge of payroll, determined employee's wages, paid employee's wages, was in charge of maintaining payroll records, personally cash employee's paychecks, held employee meetings, and personally guaranteed employees wages when the restaurant got behind on payroll, etc.  See Plaintiffs' Motion for Summary Judgment, Exhibit A (Declarations of Plaintiffs); see also Plaintiffs' Motion for Summary Judgment, Concise Statement of Material Facts, ¶¶25-30.

3.    In support of her Motion, Ms. Pfund claims that Out of the Blue did not have sales of $500,000 per year.  Plaintiffs dispute this claim:

a.    Out of the Blue Key West LLC did not defend itself and a default was entered

against it in this case.  In the Complaint, Plaintiffs alleged that Out of the Blue had revenue in excess of $500,000.00 per annum.  Complaint (D.E. 7), ¶7.  Defendant Out of the Blue did not defend itself so Plaintiffs' allegation is deemed admitted.  Defendant Pfund, as an owner and managing member of Out of the Blue could have, but chose not to, defend Out of the Blue and deny the allegation.

   b.  Defendant's only proof that Out of the Blue earned less than $500,000 is the unsigned 2009 tax return for Out of the Blue attached to her Motion for Summary Judgment.  Not only is it unsigned, but it is not verified nor sworn to by anyone.  <u>See</u> Defendant's Motion for Summary Judgment, Exhibit 1.

   c.  According to the deposition testimony of Defendant Pfund, a 2010 tax return was filed, nevertheless, she did not attach it to her Motion for Summary Judgment, thereby providing the Court with no evidence concerning the restaurant's income in 2010.  <u>See</u> Defendant Pfund's Depo., Pg. 23.

   d.  Notably, although Defendant Pfund filed an affidavit in support of her Motion for Summary judgment, she included no allegations whatsoever regarding the alleged gross sales of Out of the Blue. <u>See</u> Defendant's Motion for Summary Judgment, Exhibit 2.

   e.  Defendant Pfund admitted in her deposition that she does not know whether all of the cash received by Out of the Blue was reported by her former partner.  <u>See</u> Defendant Pfund's Depo., Pg. 23.

   f.  Defendant Pfund accuses her former partner of taking money from the cash registers, ostensibly to pay employees in cash, but actually kept the money for himself.  <u>See</u> Defendant Pfund's Depo., Pg. 23.

   g.  The daily sales records from the Point of Sale (POS) computer system were,

according to Defendant Pfund, wiped clean.  Pfund also claims that the POS system that held the backup data was "taken" and "removed from the restaurant" when she was out of town. Pfund Depo., Pg. 13.  Assuming that this is true, Defendant Pfund has no evidence of the actual sales of the restaurant.

       h.      In actuality, Plaintiffs dispute Defendant Pfund's claim that the POS system and data were "lost."  Plaintiff Robert Edwards has testified that he personally loaded the POS into Pfund's vehicle when the restaurant closed.  <u>See</u> Plaintiffs' Motion for Summary Judgment, Exhibit A (Declarations of Plaintiffs).  Plaintiffs will argue at trial that the POS system and data were not removed from the restaurant when she was out of town but, rather, were taken by Defendant Pfund and concealed or destroyed by her.

       i.      The Plaintiff servers and bartenders have testified that their personal daily sales were approximately $1,000 each per night shift.  The restaurant also had a day shift. <u>See</u> Plaintiffs' Motion for Summary Judgment, Exhibit A (Declarations of Plaintiffs).

       j.      The Plaintiff servers and bartenders have testified that the restaurant's daily sales were approximately $7,000 per day.  The Plaintiffs have testified that they saw the sheets with the total sales at the end of the night when they were doing tip outs.  The Plaintiffs have also discussed the daily sales with Ms. Pfund.  <u>See</u> Plaintiffs' Motion for Summary Judgment, Exhibit A (Declarations of Plaintiffs).

       k.      The Out of the Blue restaurant was open from October 16, 2009 to February 17, 2010, or approximately four months, or 135 days.  <u>See</u> Plaintiffs' Motion for Summary Judgment, Exhibit A (Declarations of Plaintiffs) and Plaintiffs' Concise Statement of Material Facts, ¶2.

       j.      Based on the Plaintiffs' evidence that the restaurant had gross sales of $7,000

per day, and the fact that it was open 4 months, or 135 days, the restaurant earned $945,000 in the short time it was open.

    k.  Over a one year period, the restaurant would have earned $2,555,000.

   4.  The servers processed their own credit card transactions.  <u>See</u> Pfund Depo., Pg. 46; <u>See</u> Plaintiffs' Motion for Summary Judgment, Exhibit A (Declarations of Plaintiffs).

## II. <u>CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

   1.  Plaintiffs incorporate their Concise Statement of Material Facts from their Motion for Summary Judgment as if fully set forth herein.

## III. <u>MEMORANDUM OF LAW</u>

### 1. <u>DEFENDANT PFUND WAS PLAINTIFFS' EMPLOYER</u>

   The definition of "employer" under the FLSA is "the broadest definition that has ever been included in any one act." <u>Antenor v. D&S Farms</u>, 88 F.3d 925 (11th Cir. 1996); <u>Patel v. Wargo</u>, 803 F.2d 632, 638 (11th Cir. 1986).[1]  The FLSA defines an employer to "include any ***person*** acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d)(emphasis added).  Courts have long held that officers and managers are "employers" within the meaning of the FLSA when they: (i) exercise managerial control over a business ***or*** run the day-to-day operations of a covered enterprise; ***or*** (ii) directly participate in hiring, firing, employee compensation decisions, or other work issues. <u>See, e.g.</u>, <u>Wascura v. Carver</u>, 169 F.3d 683, 686 (11th Cir. 1999).  Moreover, the Eleventh Circuit held that liability under the FLSA will attach to an individual officer or manager of a company when that person has operational control of "significant

---

[1] The term "employer" ought be interpreted more broadly under the Act than common law for remedial purposes. <u>See, e.g.</u>, <u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 139 (2nd Cir. 1999); <u>Dole v. Elliott Travel & Tours, Inc.</u>, 942 F.2d 962, 965 (6th Cir. 1991), <u>citing</u> <u>McLaughlin v. Seafood, Inc.</u>, 867 F.2d 875, 877 (5th Cir. 1989); <u>Donovan v. Agnew</u>, 712 F2d 1509, 1510 (1st Cir. 1983); <u>Falk v. Brennan</u>, 414 U.S. 190, 195 (1973).

aspects" of the business's day-to-day functions, including compensation of employees or other personnel matters.  See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir. 2008).

The Court may look to several factors to determine whether the defendant is an "employer," including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled the employees' work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Villarreal v. Woodham, 113 F.3d 202, 205 (11th Cir. 1997). "To be personally liable, [the defendant] must either be involved in the day-to-day operation *or* have *some* direct responsibility for the supervision of the employee." Patel v. Wargo, 803 F.2d 632, 638 (11th Cir. 1986)(emphasis added).

Further, multiple employer may be responsible for compliance with the FLSA within one business organization. See Elliott Travel & Tours, Inc., 942 F.2d at 965; Agnew, 712 F.2d at 1510. "[B]oth the employing corporation and the individual responsible for operation thereof may be employers for purposes of the FLSA." Figueroa v. America's Custom Brokers, Inc., 48 F. Supp.2d 1372, 1377 (S.D. Fla. 1999), citing Patel v. Wargo, 803 F.2d 632, 638 (11th Cir. 1986). In the Eleventh Circuit, "[t]he overwhelming weight of authority is that a corporate officer with operation control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." Patel, 803 F.2d at 637-38, quoting Agnew, 712 F.2d at 1511; Falk v. Brennan, 414 U.S. 190 (1973)("The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA."); see also 29 C.F.R. §791.2.

Financial control over a corporation is a significant factor in determining "employer" status. See Elliot Travel & Tours, 942 F2d 966 (6th Cir. 1991); Donovan v. Grim Hotel Co., 747 F.2d 966,

6

972 (5th Cir. 1984)(imposing FLSA liability on a "top man" who guided corporate policies and controlled "purse strings"); Donovan v. Sabine Irrigation Co., Inc., 695 F.2d 190, 193-195 (5th Cir. 1983)(liability for controlling finances and dominating the administration); Dole v. Simpson, 784 F.Supp. 538, 545-547 (S.D. Ind. 1991). Liability may also be found even if control is restricted or exercised only occasionally as such does not diminish the significance of the existence of such control. Herman, 172 F.3d at 139, quoting Donovan v. Janitorial Servs, Inc., 672 F.2d 528, 531 (5th Cir. 1982).

Accordingly, "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." Patel v. Wargo, 803 F.2d 632, 637-38 (11th Cir. 1986) (citations omitted). In other words, "[t]o be personally liable, an officer must either be involved in the day-to-day operation *or* have *some* direct responsibility for the supervision of the employee." Id. at 638 (citations omitted)(emphasis added).

Operational control includes things like determining employee compensation, supervising employees, and having the power to hire or fire employees. Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F .3d 1150, 1160-61 (11th Cir. 2008). Merely being an officer, director, or principal shareholder is not enough to establish liability as an employer under the FLSA. Id. at 1160.

Most recently, in the Southern District of Florida, at least one Court has ruled on this issue and granted summary judgment in favor of the plaintiffs in the issue of an individual employer's liability under the FLSA.  In the case of Kelly Phillips, *et al.* v. M.I. Quality Lawn Maintenance, Inc., and Mitchell Igelko, USDC S.D. Fla. Case No.: 10-20698-Civ-Seitz/O'Sullivan (February 14, 2011)(D.E. 67), the Court held:

> Based on the undisputed evidence, Igelko is an employer under the FLSA. Not only is Igelko the owner and president of both corporate Defendants, but he takes an active role in the 5 day-to-day operations of the corporate Defendants. Igelko goes to the office every day, goes out into the field everyday, and solicits business on behalf of the companies every day. Furthermore, he sets the jobs sites for each day, assigns the trucks to the job sites, and decides how many men should go to each job site. Igelko meets with his supervisors and comptroller on a daily basis.

> He also signs all of the paychecks and makes some personnel decisions, evidenced by his hiring of and promotion of del Sol. Phillips testified that Igelko was her direct supervisor and that he set her hours. ***While there is no evidence that Igelko directly supervised any of the other Plaintiffs in this action, such a finding is not necessary to find that Igelko is an "employer" under the statute. As long as Igelko was involved in day-to-day operations of the business, Igelko is an employer.*** All of the facts together clearly demonstrate that Igelko was involved in the day-today operations of the corporate Defendants. Because there is no genuine issue of material fact as to Igelko's involvement in the day-to-day operations of the corporate Defendants, summary judgment is granted.

Id. (emphasis added).

In this case, it cannot be disputed that Defendant Pfund was involved in the day-to-day operation of the restaurant. If so, then she is liable for Plaintiffs' wages under the FLSA. Plaintiffs have set forth undisputed evidence that Pfund was one of just two officers and owners of the restaurant, held herself out as the "Managing Member" to the IRS, held herself out as responsible for "accounts payable," wrote countless checks for the business, made all of the deposits for the business, and entered countless contracts and made numerous purchases for the restaurant. See Plaintiffs' Motion for Summary Judgment, ¶¶ 1-24.

Assuming, *arguendo*, that the Court finds that Defendant Pfund was not involved in the day-to-day operations of the restaurant, it is undisputed that Pfund had at least "***some***direct responsibility for the supervision of" Plaintiffs. If so, then she is liable for Plaintiffs' wages under the FLSA. Plaintiffs have set forth undisputed evidence that Pfund was one of only three people "who, for the three year period preceding the filing of this lawsuit, [was] responsible for maintaining or who participated in the maintenance of the records of: (i) the number of hours worked by Plaintiffs each work day and work week, (ii) Plaintiffs' rate of regular and overtime pay, and (iii) the amount of regular and overtime pay earned by Plaintiffs." Villarreal v. Woodham, 113 F.3d 202, 205 (11th Cir. 1997)(Individual defendant is liable under the FLSA if they maintained employment records). Additionally, Plaintiffs have also shown evidence that Pfund paid employees cash, paid employees

from her personal checking account, and funded payroll from her personal credit card.  <u>See</u> Plaintiffs' Motion for Summary Judgment, ¶¶25-30; <u>see also</u> Section I.2, supra.

### 2.     <u>OUT OF THE BLUE EARNED $500,000</u>

First, by virtue of the default entered against Out of the Blue, it is deemed admitted that Out of the Blue had gross sales in excess of $500,000.  Defendant Pfund had the opportunity to defend Out of the Blue as its owner and managing member but chose not to.  Aside from the default, and despite that fact that Defendant Pfund's Motion denies in her Motion that Out of the Blue earned more than $500,000 per year, she has provided the Court with no record evidence to support her denial except the unsigned, unverified 2009 tax return.  Defendant Pfund also did not provide the Court with the 2010 tax return despite that fact that she admitted in her deposition it was filed.  Further, although the Motion itself includes a denial that the restaurant earned $500,000, Defendant Pfund's affidavit notably contains no mention whatsoever concerning the gross sales of the restaurant, not even a denial.  In any event, Plaintiffs have submitted testimony and evidence from Plaintiffs that Out of the Blue earned more than $500,000.

The concept of restaurants like Out of the Blue underreporting their gross income and not reporting cash is not unprecedented.  In fact, the Eleventh Circuit Court of Appeals addressed this issue in the unpublished decision of <u>Francois v. Fried Green Tomatoes, Inc.</u>, Case No.: 07-11057 (October 20, 2008)(copy attached as Exhibit 1).  In <u>Francois</u>, the restaurant showed that its tax returns reflected gross revenues of less than $500,000.  The plaintiffs argued and provided evidence to the effect that (1) some cash sales were not included in the gross sales figures; and (2) cash wages were paid to employees.  <u>Id.</u>  The same situation exists here, as it is undisputed that Defendant Pfund's partner took cash from the cash registers and Plaintiffs were paid cash.  Additionally, Defendant Pfund has no reliable evidence of the actual sales given that the POS system has not been

produced.  Finally, there is the testimony of Plaintiffs regarding the restaurant's sales that far exceeds $500,000.  Clearly there is sufficient evidence from which a jury could find that Out of the Blue had gross sales exceeding $500,000.

On another note, Plaintiffs have submitted evidence from which a jury could determine that the restaurant earned $945,000 during the short time it was open and would have earned $2,555,000 in one year had it remained open.  In case there are any questions concerning the method to compute the gross annual sales of a new business, like Out of the Blue, the regulations provide as follows:

### § 779.266   Methods of computing annual volume of sales or business.

(a) No computations of annual gross dollar volume are necessary to determine coverage or exemption in those enterprises in which the gross receipts regularly derived each year from the business are known by the employers to be substantially in excess or substantially under the minimum dollar volume specified in the applicable provision of the Act. Also, where the enterprise or establishment, during the portion of its current income tax year up to the end of the current payroll period, has already had a gross volume of sales or business in excess of the dollar amount specified in the statute, it is plain that its annual dollar volume currently is in excess of the statutory amount, and that the Act applies accordingly. The computation described in paragraph (b) of this section, therefore need not be made. Nor is it required where the enterprise or establishment has not yet in such current year exceeded the statutory amount in its gross volume of sales or business, if it has had, in the most recently ended year used by it for income tax purposes, a gross volume of sales made and business done in excess of the amount specified in the Act. In such event, the enterprise or establishment will be deemed to have an annual gross volume in excess of the statutory amount unless the employer establishes, through use of the method set forth in paragraph (b) of this section, an annual gross volume of sales made or business done which is less than the amount specified in the Act. The method described in paragraph (b) of this section shall be used, as intended by the Congress (see S. Rept. 145, 87th Cong. first session, p. 38), for computation of annual dollar volume in all cases when such a computation becomes necessary in order to determine the applicability of provisions of the Act.

(b) In order to determine, when there may be doubt, whether an enterprise or establishment has an annual gross volume of sales made or business done in excess of the amount specified in the statute, and analysis will be made at the beginning of each quarter-year so that the employer will know whether or not the dollar volume tests have been met for the purpose of complying with the law in the workweeks ending in the current quarter-year. The total of the gross receipts from all its sales or business during a 12-month period which immediately precedes the quarter-year being tested will be the basis for analysis. When it is necessary to make a determination for enterprises or establishments which are operated on a calendar year basis for income tax or sales or other accounting purposes the quarter-year periods tested will

coincide with the calendar quarters (January 1–March 31; April 1–June 30; July 1–September 30; October 1–December 31). On the other hand, where enterprises or establishments are operated on a fiscal year basis, which consists of an annual period different from the calendar year, the four quarters of the fiscal period will be used in lieu of calendar quarters in computing the annual volume. Once either basis has been adopted it must be used in making subsequent calculations. The sales records maintained as a result of the accounting procedures used for tax or other business purposes may be utilized in computing the annual dollar volume provided the same accounting procedure is used consistently and that such procedure accurately reflects the annual volume of sales or business.

### § 779.268   Grace period of 1 month for computation.

Where it is not practicable to compute the annual gross volume of sales or business under paragraph (b) of §779.266 in time to determine obligations under the Act for the current quarter, an enterprise or establishment may use a 1-month grace period. If this 1-month grace period is used, the computations made under this section will determine its obligations under the Act for the 3-month period commencing 1 month after the end of the preceding calendar or fiscal quarter. Once adopted the same basis must be used for each successive 3-month period.

### § 779.269   Computations for a new business.

When a new business is commenced the employer will necessarily be unable for a time to determine its annual dollar volume on the basis of a full 12-month period as described above. In many cases it is readily apparent that the enterprise or establishment will or will not have the requisite annual dollar volume specified in the Act. For example, where the new business consists of a large department store, or a supermarket, it may be clear from the outset that the business will meet the annual dollar volume tests so as to be subject to the requirements of the Act. In other cases, where doubt exists, the gross receipts of the new business during the first quarter year in which it has been in operation will be taken as representative of its annual dollar volume, in applying the annual volume tests of sections 3(s) and 13(a)(2), for purposes of determining its obligations under the Act in workweeks falling in the following quarter year period. Similarly, for purposes of determining its obligations under the Act in workweeks falling within ensuing quarter year periods, the gross receipts of the new business for the completed quarter year periods will be taken as representative of its annual dollar volume in applying the annual volume tests of the Act. After the new business has been in operation for a full calendar or fiscal year, the analysis can be made by the method described in paragraph (b) of §779.266 with use of the grace period described in §779.268, if necessary.

Id.

Plaintiffs submit based on the foregoing regulations that the evidence establishes the restaurant's gross annual sales, for purposes of determining enterprise coverage, are $2,555,000.

### 3.   PLAINTIFF SERVERS AND BARTENDERS WERE INDIVIDUALLY

**ENGAGED IN COMMERCE**

To invoke individual coverage, an employee must show that he or she was (1) engaged in commerce; or (2) engaged in the production of goods for commerce. 29 U.S.C. § 207(a)(1)(2005). To determine whether an employee is engaged in commerce, the test is "not whether an employee's activities affect or directly relate to commerce, but whether they are actually in or so closely related to the movement of commerce as to be a part of it."  Two ways in which an employee may be "engaged in commerce" are: (1) if the employee regularly used the channels or instrumentalities of commerce; or (2) if the employee performed work related to the instrumentalities of commerce.

The Plaintiff servers and bartenders, who processed their own credit cards, "regularly used the channels or instrumentalities of commerce and are therefore individually covered under the FLSA."  According to the United States Department of Labor, employees, like the Plaintiff servers and bartenders, who process their own credit card transactions, are individually covered under the FLSA:

> Employees are covered by the Fair Labor Standards Act (FLSA) on an individual basis when they are engaged in interstate or foreign commerce on the job. Interstate commerce means any work involving or related to the movement of persons or things (including intangibles, such as information) across state lines or from foreign countries.

> Examples of covered employees who are engaged in interstate commerce include:

> > An employee such as an office or clerical worker who uses a telephone, facsimile machine, the U.S. mail, or

> > a computer e-mail system to communicate with persons in another state.

> > An employee who drives or flies to another state while performing his or her job duties.

> > An employee who unloads goods which came from an out of state supplier.

> > **An employee such as a cashier or waitress who uses an electronic device which authorizes a credit card purchase.**

See Exhibit 2 (FLSA Bulletin)(emphasis added); see also Department of Labor Opinion Letter ("[e]mployees are individually covered under the FLSA if, in the performance of their duties, they are engaged in interstate commerce.  Such employees include those who regularly handle interstate mail and telephone calls, engage in banking or credit card transactions, or receive or handle goods or materials from or destined for out-of-state sources.").   DOL Opinion Letter, FLSA, 1999 WL 1002373 (March 5, 1999).

It is notable that the *amount of time* the Plaintiffs spent on these interstate activities and commerce is *not determinative* of whether the Plaintiffs were engaged in commerce. Indeed, "an employee may be engaged in commerce or in the production of goods for commerce within the meaning of the [FLSA] even though the time he devotes to the interstate activity is *small* in amount." Montalvo v . Tower Life Bldg., 426 F.2d 1135, 1143 (5th Cir. 1970) (emphasis added).  The crucial question is whether their use and/or processing of credit cards was sufficiently regular, frequent, and substantial in amount as to constitute the Plaintiffs as being engaged in commerce.

## IV.    THE UNSWORN DECLARATIONS OF PLAINTIFFS

Defendant argues and/or infers that because Plaintiffs submitted unsworn declarations, as opposed to affidavits, the Court should not either not consider or should deem less credible the testimony of Plaintiffs.  Defendant is incorrect. Plaintiffs' declarations were prepared and submitted pursuant to 28 U.S.C. §1746, which provides as follows:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

**(1)** If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".

**(2)** If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

Id.

Therefore, and based on the foregoing authority, the Court should consider the Declarations of Plaintiffs as it would affidavits.  On the other hand, this is further evidence that the Court should not consider the 2009 tax return to Defendant's Motion for Summary Judgment because it is not signed, sworn nor verified.

## V.    CONCLUSION

Based upon the foregoing, it is clear that Defendant Pfund is *not* entitled to summary judgment and Defendant Pfund's Motion must be denied.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 17, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: David Van Loon, Esq.

Respectfully submitted,

s/Todd W. Shulby, Esq.
Todd W. Shulby, Esq.
TODD W. SHULBY, P.A.
4705 S.W. 148 Avenue, Suite 102
Davie, Florida  33330-2417
Telephone:  (954) 530-2236
Facsimile:  (954) 530-6628
Florida Bar No.: 068365
E-mail:  tshulby@shulbylaw.com
Counsel for Plaintiffs

14